UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN W. DIXON**, | ) | Case No. 1:05 CV 2499 |
| | ) | |
| Petitioner, | ) | Judge Donald Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **STUART HUDSON, WARDEN,**[1] | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Steven W. Dixon is a prisoner in state custody following his July 2003 convictions in the Richland County Court of Common Pleas on two counts of rape and two counts of gross sexual imposition involving his girlfriend's 11-year old daughter. Dixon was sentenced to a total of 18 years incarceration and adjudicated as a sexual predator and habitual sex offender subject to community notification (Sentencing Entry, Respondent's Ex. 5, Docket No. 17). Dixon appealed his conviction but his conviction was affirmed. See *State v. Dixon*, 2004 WL 1672194, 2004 - Ohio - 3940 (Ohio App. 5 Dist.). His subsequent motion for leave to file delayed appeal to the Ohio Supreme Court was granted. See *Id.* 103 Ohio St.3d 1490, 816 N.E.2d 1078, 2004 - Ohio - 5605 (Table 2004). However, following briefing this delayed appeal was dismissed as not involving any substantial constitutional question (Respondent's Ex. 19, Docket No. 17, *State v. Dixon*, 105 Ohio St.3d 1438, 822 N.E.2d 810, 2005 - Ohio - 531 (Table 2005).

Dixon also unsuccessfully pursued state post-conviction relief under Ohio Rev. Code §2953.21. See *State v. Dixon*, 2005 WL 1364615, 2005 - Ohio - 2846 (Ohio App. 5 Dist.), appeal

---

[1] Stuart Hudson is substituted as successor respondent pursuant to FED. R. CIV. P. 25(d).

1:05 CV 2499                                          2

not allowed,106 Ohio St.3d 1556, 835 N.E.2d 581, 2005 - Ohio - 5531 (Table 2005).  This appeal

from denial of post-conviction relief to the Ohio Supreme Court was dismissed as not involving any

substantial constitutional question on October 26, 2005 (Respondent's Ex. 32).


On September 20, 2004, Dixon also filed an application to reopen appeal under Ohio R.

App. P. 26(B) with respect to appellate counsel's effectiveness on direct appeal (Ex.33). Dixon's

arguments raised in this application to reopen were denied after due consideration by the state

appellate court on January10, 2005 (Ex. 36), and Dixon took no further appeal.


While his claims were pending in state post-conviction proceedings, Dixon initiated  this

case in federal district court *pro se* seeking habeas corpus relief under 28 U.S.C. §2254.  Shortly

thereafter his state remedies were exhausted with the Ohio State Supreme Court's dismissal of post-

conviction review.   Dixon has exhausted his state remedies with respect to his four grounds.[2]

Respondent contends that review of all four grounds is barred due to sundry procedural defaults

committed by Dixon in state court.

> **GROUND ONE**:    Petitioner's constitutional rights to due process of law were
> violated when his presumption of innocence was deprived.
>
> Supporting Facts:    The petitioner was made to wear an "arm shocker/restraint
> device" in front of a jury at his trial. This device was in "plain
> sight" of the jury as well as the Judge and petitioner's family.

---

[2] Dixon also engaged in mandamus procedures, and applied for DNA testing.  None of these matters is germane
to the four grounds presented for federal review.

1:05 CV 2499                                3

In this first ground Dixon claims a denial of due process under *Illinois v. Allen,* where defendant was visibly shackled at trial. See *id.*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). This first ground as well as the second ground were presented in state post-conviction proceedings and later to the Ohio Supreme Court through both the appeal from denial of the state post-conviction petition

(Memorandum in Support of Jurisdiction, Ex. 17) and in the delayed appeal. ( Memorandum in Support of Jurisdiction, Ex. 31).

**Post-Conviction:**

*Lack of Contemporaneous Objection:*

Federal collateral review is barred due to the state appellate court's decision made with clear and express reliance on failure to object to defendant's appearance before the jury wearing an electrical shocking device on his left wrist. See *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Here, on post-conviction review, the state appellate court found that there was no contemporaneous objection in the record by Dixon regarding the "arm shocker restraint" and proceeded to review the argument under plain error analysis. See *Dixon*, 2005 WL 1364615 at ¶¶ 26-40. Ohio's contemporaneous objection rule is an adequate and independent state rule and a defendant who fails to object waives review of the issue both in state review and  federal habeas corpus review absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 207); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir.

1:05 CV 2499                                             4

2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000).[3]   Subsequent plain error review by

Ohio state courts does not waive this procedural default.  See *Girts v. Yanai,* 501 F.3d 743, 755 (6th

Cir. 2007); *Keith*, 455 F.3d at 673; *Williams*, 380 F.3d at 968-69;  *Seymour v. Walker*, 224 F.3d 542,

547 (6th Cir. 2000).   Further the subsequent unexplained denial of appeal by the Ohio Supreme

Court is presumed to rest on the continuation of this procedural default when the state supreme court

decision is unexplained.  See *Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003) (plain error);

*Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (plain error).  This presumption carries through

notwithstanding the Ohio Supreme Court's dismissal on the basis of no substantial constitutional

question.  See *Levine v. Torvik*, 986 F2d. 1506, 1517 n. 8 (6th Cir. 1993) *cert. denied*, 509 U.S. 907

(1993), abrogated on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Hinkle*, 271 F.3d

at 244; and see *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

---

[3]   When respondent argues that a ground has been defaulted due to a state procedural rule, a four-part analysis must be performed in order to determine the validity of the state procedural rule that constituted the basis for the alleged procedural default:

> (1) whether there is a procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to follow this rule; (2) whether the state courts actually enforced the state procedural rule; (3) whether the state procedural rule is an adequate and independent state ground to foreclose federal relief; and if so (4) whether the petitioner has established cause for his failure to follow the rule and prejudice by the alleged constitutional error. (citations omitted).

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

With respect to the third element under *Maupin*, a state procedural rule dismissing a federal claim, for a reason other than lack of merit, must  be both "adequate and independent."  See *Fay v. Noia*,  372 U.S. 391, 398-99, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Douglas v. Alabama,*  380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Lee v. Kenma*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 810 (2002).  To be adequate, the state procedural rule must be both "firmly established and regularly followed" at the time it was applied by the state court.  See *Ford v. Georgia*, 498 U.S. at 424.  Rules that are firmly established and regularly followed will be adequate to foreclose review of the federal claim.  See *James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 80 L.Ed.2d 386 (1984); *Ford v. Georgia*, 498 U.S. at 422-24, *Lee*, 534 U.S. at 376.  "Adequacy of the state procedural rule is itself a federal question."  See *Douglas v. Alabama*, 380 U.S. at 422.

1:05 CV 2499                                        5

*Ineffective Assistance of Counsel as Cause to Excuse Procedural Default:*

Ineffective assistance of trial counsel may constitute "cause" to excuse procedural default. See *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Monzo v. Edwards*, 281 F.3d 568, 577 (6ᵗʰ Cir. 2002);  *Girts*, 501 F.3d at 756.  Dixon did present ineffective assistance of trial counsel to excuse failure to object to the electrical restraint at trial.  See *Dixon*, 2005 WL 1364615 at ¶¶34-38. [4]

The adage from *Murray*, is that, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray*, 477 U.S. at 492, 106 S.Ct. at  2647-2648. Further, "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*.,  477 U.S. at 489, 106 S.Ct. at 2646. This leaves unanswered the question whether now under the constraints of the AEDPA, which requires  federal deference to state court decisions, 28 U.S.C. §2254(d) applies  to consideration of the state court's

---

[4]   "[A] claim of ineffective assistance,"..., generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*,  529 U.S. at 452, 120 S.Ct. at 1591, quoting *Murray v. Carrier*, 477 U.S. 478,  489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

1:05 CV 2499                                6

reasoning on this independent claim of ineffective assistance of counsel.[5]  It is clear that at this point

federal review departs from deference to the state decision. The decisions in *Ege v. Yukins*, 485 F.3d

364 (6th Cir. 2007) and *Joseph v Coyle*, 469 F.3d 441, 459 (6th Cir. 2006), *cert. denied*, - U.S. -, 127

S.Ct. 1827 (2007), sharpen the unelaborated point from *Hinkle v. Randle,* that no deference is owed

the state court decision when ineffective assistance of counsel is being utilized "in another guise as

'cause'" to excuse a procedural default  in contrast to what *Ege* refers to as the "free-standing

ineffective assistance claim."  See *Ege*, 485 F.3d at 380;[6] *Hinkle*, 271 F.3d at 245-46.  As *Hinkle*

illustrates,  review of ineffective assistance of trial counsel due to the failure to contemporaneously

object is an independent assessment by the federal district court to ascertain whether the alleged

ineffectiveness was sufficient to constitute "cause" to excuse procedural default. No deference is

given the state court decision under 28 U.S.C. §2254(d).  See *Hinkle,* 271 F.3d at 245-46; *Joseph*,

469 F.3d at 459.[7]

_____

[5]  For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of federal review of state convictions follows:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[6] The decision in *Ege* explained, "We note again the use of an ineffective assistance of counsel claim to excuse procedural default of another claim -- here Ege's due process claim – is different from use of an ineffective assistance claim standing alone."  *Id.*, 485 F.3d at 379 n. 7.

[7] This independent review will alleviate any concern  over criticism of the state appellate court's decision from Dixon's appeal on the effectiveness of trial counsel as conflating plain error review with review of counsel's effectiveness.  See  Kristin Traicoff, *Closing Two Doors, How Courts Misunderstand Prejudice Under **Olano** and **Strickland** ,*21 -WTR Crim. Just. 24 (Winter 2007); and see *Dixon*, 2005 WL 1364615.

1:05 CV 2499                                    7

In this independent review of counsel's effectiveness as "cause" to excuse procedural default, attorney error cannot serve as cause "unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in *Strickland v. Washington* . . . Under *Strickland*, [the court] must strongly presume that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' 466 U.S. at 690, 104 S.Ct. 2052." *Hinkle*, 271 F.3d at 245. Accordingly, to sustain a violation of the constitutional guarantee under the Sixth Amendment to effective assistance of counsel, Dixon must first show that counsel was not functioning as the "'counsel 'guaranteed the defendant by the Sixth Amendment,'" and secondly "must show that the deficient performance prejudiced the defense," so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[8]

---

[8] "The Supreme Court has declined to provide a general definition of "prejudice" for purposes of cause and prejudice. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nevertheless, the Court has given some instructive content to the term by explaining that one way to establish the prejudice component of cause and prejudice is to establish *Brady* materiality. *Banks v. Dretke*, 540 U.S. 668, 691, 698, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004); *Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Given that *Strickland* prejudice is governed by a standard worded similarly to the *Brady* materiality standard, compare *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (internal quotation marks omitted)), with *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."), it follows that establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice. *Mincey v. Head*, 206 F.3d 1106, 1147 n. 86 (11th Cir.2000), *cert. denied*, 532 U.S. 926, 121 S.Ct. 1369, 149 L.Ed.2d 297 (2001); *Prou v. United States*, 199 F.3d 37, 49 (1st Cir.1999).(footnote omitted)."

*Joseph v. Coyle*, 469 F.3d 441, 462 -463 (6th Cir.2006)

1:05 CV 2499                                          8

Under the two-prong standard of *Strickland*, Dixon's trial counsel was not ineffective as measured under the Sixth Amendment.  First, allowing Dixon to appear before the jury under court-imposed restraint is not necessarily a professionally unreasonable strategy.[9]  Second, even assuming that counsel's performance was unreasonable, Dixon has not shown actual prejudice to raise the spectre of reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different considering "the totality of the evidence before the judge or jury." *Hinkle*, 271 F.3d at 245 citing and quoting *Strickland*, 466 U.S. at 692-95.

The case against Dixon was built upon testimony of the victim, her behavior as conforming to a victim of sexual abuse, letters written by Dixon to the victim's mother, and tears of the victim's genitalia.  (Closing Argument TR. 405-13, Docket No. 18).  Dixon harps on the negative results from the sexual assault test kit and that no semen was uncovered from the victim, her clothing or bed coverings.  Given this overwhelming evidence, even assuming counsel's failure to object was an unreasonable strategic decision in allowing Dixon to wear the electrical restraint, Dixon has not shown a reasonable probability of a different outcome sufficient to underline the confidence in the

---

[9] In analyzing a defendant's appearing before the jury in prison garb, the Supreme Court in *Estelle v. Williams* remarked:

> The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments.  The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury. *This is apparently an accepted practice in Texas courts.  Barber v. State, 477 S.W.2d 868, 870 (Tex. Crim.. App. 1972), including the court where respondent was tried.*
> Courts have therefore required an accused to object to being tried in jail garments, just as he must invoke or abandon other rights.  The Fifth Circuit has held: "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error."  (footnote in citations omitted, emphasis in original). *Estelle*, 425 U.S. 501, 508, 96 S.Ct. 1691, 1695, 48 L.Ed.2d 126 (1976).

1:05 CV 2499                                        9

trial.  See *Strickland*, 466 U.S. at 694.[10]  Accordingly, Dixon fails to establish "cause" based on

ineffective assistance of trial counsel to excuse the procedural default.  Cause and prejudice are in

the conjunctive and the failure to show cause terminates this analysis.  See *Murray*, 477 U.S. at 497.


*Actual Innocence:*

This leaves the final issue whether Dixon can show a "fundamental miscarriage of justice"

resulting in the conviction of one who is actually innocent to escape the procedural bar to federal

review.  See *Dretke v. Haley*, 541 U.S. 386, 393, 124 S.Ct. 1847, 1852, 158 L.Ed. 2d 659 ( (2004);

*Murray*, 477 U.S. at 495-96.; *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851,867, 130 L.Ed.2d

808 (1995).  "A prototypical example of 'actual innocence' in a colloquial sense is the case where

the State has convicted the wrong person of the crime."  *Sawyer v. Whitley*, 505 U.S. 333, 340, 112

S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). "In *Schlup*, the [ Supreme] Court adopted a specific rule

to implement this general principle. It held that prisoners asserting innocence as a gateway to

defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *House v. Bell, -*

U.S.-,  126 S.Ct. 2064, 2076 -2077, 165 L.Ed.2d 1 (2006).  This requires support from, "allegations

of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial."

*Schlup*, 513 U.S. at 324; *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

---

[10] Overwhelming evidence of guilt is a frequent consideration in negating alleged ineffectiveness of counsel. E.g., *Girts v. Yanai*, 501 F.3d at 760-61 (failure to object); *Harrison v. Motley*, 478 F.3d 750, 757 (6th Cir. 2007) (alleged conflict of interest); *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071 ("overwhelming aggravating factors" presented at sentencing hearing).

1:05 CV 2499                                      10

Dixon claims actual innocence along the lines of a challenge to the sufficiency of the evidence based on his argument for acquittal due to negative test results. "Actual innocence means 'factual innocence not mere legal insufficiency.'" *Bousley v. U.S.*, 523 U.S. 614, 5623-24, 118 S.Ct. 1640, 140 L.Ed.2d 828 (1999). The negative test results do not necessarily disprove sexual conduct. Moreover, he offered no **new** reliable evidence that was not presented at trial as a gateway to his defaulted claims to sustain his claim of actual innocence to excuse the procedural default. As a result, federal review is barred by this procedural default as enforced in the state decision.

### *Delayed Appeal to Ohio Supreme Court:*

*Failure to raise issue to State District Court of Appeals:*

Dixon argued denial of due process rights by wearing the "arm shocker/restraint" in his memorandum in support of jurisdiction to the Ohio Supreme Court under Ohio S.Ct. Prac. R. II §2(A)(4)(c),which dismissed the delayed appeal for lack of any substantial constitutional question.[11] Respondent points out that this claim was not raised to the state district court of appeals in the direct appeal, so federal habeas corpus review is barred by Dixon's failure to fairly present this ground before the Ohio Supreme Court.

---

[11] After granting leave to file a delayed appeal, the Ohio Supreme Court procedure is then to permit briefing of the issues as explained in Ohio S.Ct. Proc. Rule II ¶2(A)(4)(c):

> A memorandum in support of jurisdiction shall not be filed at the time a motion for delayed appeal is filed. If the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within 30 days after the motion for delayed appeal is granted. If a memorandum in support of jurisdiction is not timely filed after a motion for delayed appeal has been granted, the Supreme Court will dismiss the appeal.

1:05 CV 2499                                11

A failure to fairly present the federal ground to the state's highest court constitutes an adequate and independent state procedural rule barring habeas review.  See *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied* 546 U.S. 821 (2005).  A failure to fairly present a federal ground occurs not only with its omission but also when it has been presented, "in such a manner that the state court could not, consistent with its own procedural rules, have entertained it."  *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000).

The Sixth Circuit in *Fornash v. Marshall* and *Leroy v. Marshall* explained, "[t]he Ohio Supreme Court has stated that it would not consider constitutional claims not raised and presented in the Ohio Court of Appeals," based on *State v. Phillips*, 27 Ohio St.2d 294, 272 N.E.2d 347, 56 O.O.2d 114 (1971).  See  *Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir. 1982); *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985).  This rule from *Phillips* proved to be overly rigid and was relaxed in  *In re M.D.,* 38 Ohio St.3d 149, 527 N.E.2d 296 (1988), to allow the Ohio Supreme Court to overlook waiver "to consider constitutional challenges to the application of statutes in specific cases of plain error or where the right and interest involved may warrant it."  *In re M.D.*, 38 Ohio St.3d at 149, 527 N.E.2d at 286 (syllabus).

Since Dixon's first ground does not present a challenge to the constitutionality of a state statute, resolution of his claim falls back on the general rule as restated by Ohio's Supreme Court, "[i]t is axiomatic, . . .,  that issues not presented for consideration below will not be considered by

1:05 CV 2499                                          12

this court on appeal."  *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 462-63

(1991), overruled on other grounds by *Collins v. Sotka*,  81 Ohio St.3d 506, 691 N.E.2d 581 (1998).

Dixon offers no additional argument for cause or actual innocence to excuse this second procedural

default. Consequently, there are adequate and independent state procedural rules in place which bar

review by the Ohio Supreme Court of Dixon's first constitutional claim and these procedural

defaults extend to bar federal collateral review.


|              |                                                             |
|--------------|-------------------------------------------------------------|
| **GROUND TWO**: | Petitioner's constitutional rights to a fast and speedy trial were violated. |
| Supporting Facts: | Petitioner was on parole. On 9/27/02, petitioner was taken to police station for questioning. On that day, a parole holder was placed on petitioner (petitioner was not charged with a crime) for accusations derived from this questioning. Petitioner was held in custody "solely" on a parole holder. On 1/14/03, petitioner was taken to the Richland County jail for arraignment (Petitioner was secretly indicted on 12/5/02). Petitioner remained in custody for a total of 293 days before he went to trial. |

***Post-Conviction:***

Dixon argued that he remained in state custody 293 days from the date of his arrest until his

case came to trial.  His arguments primarily focused on Ohio's Speedy Trial Act, maintaining that

his trial was untimely because he was entitled to the "triple count" provision of §2945.71(E).  The

state appellate court held that a prisoner detained under violation of parole holder was not entitled

to this acceleration provision.  See *Dixon*, 2005 WL 1364615 at ¶¶9-17.

1:05 CV 2499                                    13

The Sixth Amendment constitutional right to speedy trial, as opposed to the state statutes raised by Dixon, is not based on fixed time limitations but is a functional analysis based on balancing.  As succinctly stated in *Solem v. Helm*:

> A State is constitutionally required to provide an accused with a speedy trial, *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), but the delay that is permissible must be determined on a case-by-case basis. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . ." *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972) (unanimous opinion). In *Barker* we identified  some of the objective factors that courts should consider in determining whether a particular delay was excessive. *Id.*, at 530, 92 S.Ct. , at 2192.  None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*, at 533, 92 S.Ct., at 2193.  Thus the type of inquiry that a court should conduct to determine if a given sentence is constitutionally disproportionate is similar to the type of inquiry required by the Speedy Trial Clause.

*Id.*, 463 U.S. 277, 294-95, 103 S.Ct. 3001, 3012, 77 L.Ed.2d 637 (1983).

The four non-exclusive factors identified in *Barker* for this functional analysis are: length of delay; whether the government or the criminal defendant was more to blame for the delay; whether defendant asserted his right to speedy trial in due course; and whether the criminal defendant suffered prejudice as a result of the delay.  *Barker*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); and see  *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001).  The first factor of length of delay is the critical threshold.  Delay must be sufficiently long to be "presumptively prejudicial" before the remainder of the analysis is undertaken.  *Barker*, at 530.  Generally, delay

1:05 CV 2499                                                14

approaching one-year serves as a guidepost for the presumption of prejudice.  See *Doggett*, 505 U.S. at 652 n. 1; *Wilson*, 250 F.2d at 394.

Violations of Ohio's Speedy Trial Act (Ohio Rev. Code §§2945.71-2945-73) do not present a constitutional claim.  See *Hutchison v. Marshall*, 744 F.2d 44, 45 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985).  Ohio's Speedy Trial Act "has nothing to do with fairness of the trial itself. . . [but rather] goes to the fairness of . . . extended pretrial detention."  *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998); *Hutchison* at 47.  Comity requires deference to state court judgments on denials of state-law based speedy trial claims.  *Hutchison* at 46.  This court cannot adjudicate that portion of Dixon's argument focused on this state law based claim.

Respondent argues that there is nothing left for review because no constitutional speedy trial claim was presented to the state appellate court.  That is essentially correct.  Dixon mentioned the Sixth Amendment only in passing. (Appellate Brief, p. 8, Ex. 27)  But the state appellate decision did refer to *Klopfer v. North Carolina*, in addressing Dixon's speedy trial arguments, but did not

1:05 CV 2499                                        15

appear to address a constitutional claim, other than setting up its discussion of the right to speedy

trial. [12] (*Dixon*, 200 WL 1364615 at ¶11).

There is no absolute certainty here that a federal claim was not presented but allowing Dixon

the benefit of the doubt provides him no advantage since a deferential standard of review applies to

the state decision, which liberally states, "that a state court need not even be aware of all precedents,

'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"

*Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v.*

*Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*)

Dixon's claim of detention pending trial of 293 days fails to meet the first criterion of

presumptive prejudice of delay of 1-year or more to trigger "the rest of the speedy trial analysis."

See *Barker*, 407 U.S. at 530; *Doggett*, 505 U.S. at 652 and n. 1.  Ultimately his claim fails because

he alleges no prejudice to his defense as a result of delay.   See *Barker*, 407 U.S. at 530.

---

[12] Whether a petitioner has "fairly presented" the same claim in the state courts is determined by whether petitioner can show:
>    (1) reliance upon federal cases employing constitutional analysis;
>    (2) reliance upon state cases employing federal constitutional analysis;
>     (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or
>    (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Franklin*

*v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), *cert denied*, 532 U.S. 958 (2001).

1:05 CV 2499                                16

Accordingly, Dixon has not demonstrated that denial of his ground would be "contrary to" nor "an unreasonable application" of clearly established Federal law.

**Delayed Appeal**:

As respondent contends, Dixon failed  to "fairly present" this claim to the Ohio Supreme Court by bypassing the state appellate court on direct appeal.  See *Fornash v. Marshall*, 686 F.2d at 1185 n. 7; *Leroy v. Marshall*, 757 F.2d at 99.  Further, as explained under the first ground there is no cause  or fundamental miscarriage of justice to excuse this procedural default, and in any event the procedural bar does not prejudice Dixon since there clearly is no merit to Dixon's second ground.

>  **GROUND THREE**:  Petitioner was denied his due process rights when the prosecutor for the State committed prosecutorial misconduct.
>
>  Supporting Facts:  During the course of petitioner's trial, the prosecution for the State elicited testimony from one of the State's witnesses pertaining to the fact that Petitioner was "not a resident of their town." The prosecution for the State asked the witness if petitioner was from "Detroit, Michigan?" And where the prosecution for the State introduced my personal letters to the jury, letters that showed my "present incarceration during trial."

**Delayed Appeal**:

*Lack of Fair Presentation*:

To be "fairly presented" the constitutional claim presented to the federal courts must rest on the same theory as was presented in state court. See *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.

1:05 CV 2499                                        17

1998); *Pillete v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  "Relatedness of the issues . . . does not save [petitioner's] claim." *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001).

Prosecutorial misconduct could not be presented directly in the state appellate district court due to trial counsel's failure to object at trial. See *State v. Clemons*, 82 Ohio St. 3d 438, 451, 696 N.E.2d 1009, 1021 (1998); *State v. LaMar*, 95 Ohio St.3d 181, 204, 767 N.E.2d 166, 211 (2002), and see *State v. Bethel*, 110 Ohio St.3d 416, 447-48, 854 N.E.2d 150, 186 (2006). The Sixth Circuit has recognized the failure to object to prosecutorial misconduct at trial constitutes an adequate and independent state procedural default that carries through to bar federal habeas review of alleged prosecutorial misconduct. See *Nields v. Bradshaw*, 482 F.3d at 451; *Mason v. Mitchell*, 320 F.3d at 635. Consequently, appellate counsel's best remaining alternative was to argue that trial counsel was ineffective for failing to object, which is what occurred in Dixon's direct appeal. The state appellate court was presented with argument of alleged ineffective assistance of counsel for failing to object, not prosecutorial misconduct.  See *Dixon,* 2005 WL 1364615 at ¶17, 52-54.[13]

Subsequently,  the issue of prosecutorial misconduct was presented as the third proposition of law in his delayed appeal to the Ohio Supreme Court.  (See Memorandum in Support of Jurisdiction, p # I, Ex. 17, Docket No. 17).  Dixon's explanation was that ineffective assistance of appellate counsel prevented him from raising the issue of prosecutorial misconduct.  *(Id.* p. 14).

---

[13] The state appellate court found the "cursory suggestion" that Dixon came from Detroit was not a failure to provide a reasonable representation and that tactical and strategic trial decisions do not generally constitute ineffective assistance of counsel.  See *Dixon* at ¶ 53.

1:05 CV 2499                                        18

In this matter, presentation of a claim which had not been raised in the direct appeal resulting in a state procedural default carries through to bar federal collateral review. See *Fornash v. Marshall*, 686 F.2d at 1185 n. 7; *Leroy v. Marshall*, 757 F.2d at 99. Further, on independent review of appellate counsel's effectiveness under the guise of "cause" to excuse the default, Dixon cannot show that appellate counsel performed unreasonably as evaluated under *Strickland*, in exercising the only remaining option of challenging trial counsel's effectiveness. Accordingly, federal review of the claim of prosecutorial misconduct as presented in delayed appeal before the Ohio Supreme Court is barred due to the lack of "fair presentation."

**Post-conviction**:

     In his appeal from denial of his post-conviction petition, Dixon did not raise the issue of prosecutorial misconduct, but raised the matter as an issue of trial court error (See *Dixon,* 2005 WL 13664615 at ¶¶ 8, 18-25.)

The respondent, however, concedes that Dixon raised the prosecutorial misconduct claim in his memorandum in support of jurisdiction to the Ohio Supreme Court from the denial in the post-conviction petition.(Ex. 31).  Nevertheless, this argument  was premised on a new ground of prosecutorial misconduct as opposed to trial court error, as had been presented to the state appellate court, and thus is not a fair presentation to the Ohio Supreme Court pursuant to state rules. See *Fornash v. Marshall*, 686 F.2d at 1185 n. 7; *Leroy v. Marshall*, 757 F.2d at 99.  Accordingly there

1:05 CV 2499                                                19

is again a lack of fair presentation and again Dixon has failed to sustain "cause" to excuse the

procedural default or actual innocence. [14]

> **GROUND FOUR**:   Petitioner was denied due process of law when he was not
> afforded the right to have a sealed file on the alleged victim
> opened.
>
> Supporting Facts:   During the trial of the Petitioner, there was a "sealed file"
> available on the alleged victim in this case, showing that this
> alleged victim had (on two previous occasions) "lied about
> sexual overtures" against two other individuals. The "sealed
> file" had proof that this alleged victim had "lied" (police files
> indicated as much). Petitioner was heavily convicted on the
> testimony of this alleged victim whose credibility was a major
> factor.

---

[14] Dixon in his Ohio R. App. P. 26(B) application to reopen appeal due to ineffective assistance of appellate counsel claimed his appellate attorney was ineffective for failing to raise claims of prosecutorial misconduct with respect to the reference to Detroit, Michigan and Dixon's letters written from prison.  (See Ex. 33).  However, ineffective assistance of counsel used to establish procedural default may  be procedurally defaulted. See *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir 2005); *Edwards v. Carpenter*, 529 U.S. at 450-51 ("A procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective-assistance claim itself.").  Dixon did not appeal the denial of his application to reopen appeal to Ohio's Supreme Court thereby defaulting on his ability to use ineffective assistance of appellate counsel as "cause" to excuse the default.  Naturally, since Ohio's Supreme Court was not presented with these arguments, Dixon cannot rely on the fact that no clear and express statement of reliance on the state procedural bar.  See *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

1:05 CV 2499                                        20

***Delayed Appeal:***[15]

*Failure to Fairly Present Constitutional Claim:*

The respondent contends that there is no fair presentation of a constitutional claim as alleged under the fourth ground because the arguments were based on state statutory and evidentiary rules, not the constitution.  In his direct appeal Dixon's first assignment of error concerned the trial court's granting the state's motion to quash a subpoena *duces tecum* and in granting protective orders pursuant to several state statutory provisions pertaining to the Children's Services Board records when used as evidence.  See *Dixon*, 2004 WL 1672194 at ¶¶6, 9-14. In his memorandum in support of jurisdiction for the delayed appeal, this argument appeared under  a different legal theory of ineffective assistance of appellate counsel for failing to have proper supporting cases to have the sealed file opened.  (Memorandum p. #1, Ex. 17.) Consequently, there are two procedural defaults: (1) failure to present the same claim in state appellate district court; and (2) failure to fairly present the constitutional claim as a matter of federal due process under the Fourteenth Amendment to the state courts. The Supreme Court has emphasized that this latter situation typically results in a lack of fair presentation of the constitutional claim, stating:

> If state courts are to be given the opportunity to correct alleged violations
> of prisoners' federal rights, they must surely be alerted to the fact that the
> prisoners are asserting claims under the United States Constitution.  If a
> habeas petitioner wishes to claim that an evidentiary ruling at a state trial
> court denied him the due process of law guaranteed by the Fourteenth
> Amendment, he must say so, not only in federal court, but in state court.

---

[15]   In the state post-conviction proceedings, there was no argument presented to the state appellate court concerning the sealed records.  See *Dixon*, 2005 WL 1364615, Appellate Brief, Ex. 27, and see Memorandum in Support of Jurisdiction, Ex. 31, raising constitutional claims for violation of due process for visible electrical restraint and denial of speedy trial.

1:05 CV 2499                                    21


 *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995).

Consequently, Dixon's fourth ground was not fairly presented in state court and federal review is

barred by this default.


*Lack of Cause:*

      Respondent adds that as "cause" to excuse this procedural default, Dixon had argued the

issue of appellate counsel's ineffectiveness in his Ohio R. App. P. 26(B) application to reopen

appeal asserting the failure to raise the sealed record claim as a constitutional claim.(Ex.33).

Again, no appeal was taken to Ohio's Supreme Court so this "cause" was procedurally defaulted.

See *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir 2005); *Edwards v. Carpenter*, 529 U.S. at

450-51 ("A procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to

excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the

"cause and prejudice" standard with respect to the ineffective-assistance claim itself."). The

claim Dixon now presents was not presented in state court on the same legal theory and

consequently there is a lack of fair presentation barring federal review unexcused by "cause" or a

gateway claim of actual innocence.

1:05 CV 2499                                          22

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons dismissal of this matter is recommended because federal collateral review is barred due to petitioner's failure to fairly present his claims to the state's highest court coupled with failure to demonstrate "cause" to excuse the procedural default or alternatively failure to demonstrate a gateway claim of actual innocence. Consequently, Dixon cannot establish a decision of the state court which was either contrary to nor an unreasonable application of clearly established federal law nor an unreasonable application of the facts for purposes of 28 U.S.C. §2254(d)(1) and (2).  Further, Dixon has not demonstrated a need for evidentiary hearing.

 

                                        <u>      s/James S. Gallas        </u>
                                        United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

 

Dated: January 28, 2008